Helen CLARK, Plaintiff,

v.

Alton CAMPBELL, Newton County Judge and the Western Surety Company, Inc., Defendants.

No. 79–3026.

United States District Court,
W. D. Arkansas,
Harrison Division.

May 28, 1981.

Joe Villines, Jr., Harrison, Ark., for plaintiff.

Thomas A. Martin, Jr., Jasper, Ark., Ronald A. May, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HOWARD, District Judge.

This is an action against the County Judge of Newton County, Arkansas, Alton Campbell, by Helen Clark alleging that she was terminated, as Director of the Newton County Program on Aging, on January 1, 1979, for political reasons. It is conceded that plaintiff is a member of the Democratic Party and has been an active supporter of her party locally and its candidates over the years; and that the defendant is the first Republican to assume the office of County Judge of Newton County in a decade.

Plaintiff seeks reinstatement as Director, back wages and damages for "mental anguish, indignities and suffering" in the sum of $36,000.00. While plaintiff's complaint does not set out any jurisdictional grounds, it is clear that plaintiff brings this action under Title 42 U.S.C. Section 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiff contends vigorously that her dismissal is grounded solely on her exercise of First Amendment rights guaranteed under the United States Constitution and made applicable to a state and its political subdivision under the Fourteenth Amendment.

Plaintiff was hired as the first Director of the Newton County Aging Program in April, 1974, at the recommendation of Lloyd Kennedy, Area Director of Aging Programs for Northwest Arkansas of which Newton County is a constituent part.

On December 29, 1978, three days before defendant assumed office as County Judge, the defendant advised plaintiff that her services would be terminated effective Jan-

uary 1, 1979. On January 9, 1979, plaintiff requested defendant to inform her of the reasons for her dismissal. The defendant did not respond to plaintiff's written communication. Plaintiff instituted this action on June 28, 1979.

In addition to denying that plaintiff was discharged for political reasons, the defendant filed motions for a partial summary judgment and to dismiss this action, contending, first, that the director's position had been abolished and was no longer in existence; and, accordingly, defendant is entitled to a summary judgment on plaintiff's request for reinstatement; and, secondly, that plaintiff's action should be dismissed because a County Judge, under Article 7, Section 28, of the Arkansas Constitution, as a judicial officer, enjoys an absolute immunity from liability in actions such as plaintiff's.[1] The Court reserved a ruling on defendant's motions and proceed to hear the case on the merits.

The Court now denies defendant's request for a partial summary judgment and his motion to dismiss. The plaintiff, in essence, disputed defendant's assertion that the position she previously held had been abolished. It is clear that the Court was confronted with an issue of fact relative to the existence or nonexistence of the position of director, as opposed to a question of law. Relative to the purported immunity that defendant enjoys, the Court deems it sufficient to state that the Court is not persuaded that a County Judge, in hiring or firing county employees, is exercising a judicial function. It is clear that these duties are purely administrative and ministerial in scope. Applicable statutory law, Ark.Stat. Ann. § 17–3901 (Repl.1980), provides:

"... [T]he following [are] executive powers to be administered by the County Judge:

    . . . .

"(6) to hire county employees, except those persons employed by other elected officials of the county.

"In the performance of such executive duties, the County Judge shall be bonded . . . ."

It is settled law that the doctrine of judicial immunity may be invoked effectively to shield a judicial officer against liability in an action involving the exercise of his judicial duties as opposed to his administrative responsibilities. *Ex Parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1879). While the concept of judicial immunity is applicable to actions under Section 1983, the doctrine seems to be restricted to damage actions and is not applied strictly where injunctive, or protective relief is sought. *Bramlett v. Peterson*, 307 F.Supp. 1311 (D.C.Fla.1969); *Doe v. The County of Lake, Indiana*, 399 F.Supp. 553 (N.D.Ind.1975); *Ex Parte Virginia*, supra; *Callahan, et al., v. Sanders, et al.*, 339 F.Supp. 814 (D.C.Ala. 1971).

The distinction between a judicial act and an administrative one is determined by "the character of the act and not by the character of the actor." *Doe v. The County of Lake, Indiana*, supra.

The Court is persuaded, and accordingly, finds that the defendant in discharging the plaintiff was exercising administrative functions which have been statutorily defined as "executive powers." It is signif-

---

1. Article 7, § 28 provides:

The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one judge, except in cases otherwise herein provided.

Section 3 of Amendment No. 55 to the Arkansas Constitution provides:

The County Judge, in addition to other powers and duties provided for by the Constitution and by law, shall preside over the Quorum Court without a vote but with the power of veto; authorize and approve disbursement of appropriated county funds; operate the system of county roads; administer ordinances enacted by the Quorum Court; have custody of county property; hire county employees, except those persons employed by other elected officials of the county.

icant to note that Arkansas' county judges are required to be "bonded" before engaging in the performance of these executive responsibilities. The requirement of bond negates defendant's insistence that the "hiring and firing" of county employees by a county judge is essentially a judicial act. Indeed, if the act of "hiring and firing" county employees were covered under the doctrine of "absolute immunity," the bond requirement under the statute would be meaningless.

The Court now proceeds to deal with the merits of the case.

The Newton County personnel policies pertaining to the dismissal of county employees provide:

"An employee who gives unsatisfactory services is subject to dismissal by his supervisor with the concurrence of the county judge. An employee so dismissed may request a hearing before the county judge by filing a written appeal with the county judge.

. . . .

"An employee may arrange a meeting with the county judge to discuss any grievances. If it is still unresolved, the matter may be appealed to the Ceta Administrator under their program who shall make the final determination." [2]

The defendant testified that prior to assuming office on January 1, 1979, numerous complaints were registered with him by citizens residing in Newton County regarding the plaintiff's inability, as director, to administer to the needs of the elderly. The defendant stated that the complaints were so numerous and pervasive that he decided that plaintiff's services would be terminated; and that politics played no role in his decision.

Plaintiff testified that she concluded that the nonrenewal of her employment was for political reasons because she had never been told that she was not performing satisfactorily as Director of the Aging Program and had not received any complaints from recipients. Lloyd Kennedy testified, however, that he personally conferred with plaintiff on several occasions in order to inform plaintiff of the numerous complaints that he had received.

Mr. Kennedy, who had recommended the plaintiff for the directorship, also testified that during the years of 1976 and 1977, he had become dissatisfied with the performance of the plaintiff and had communicated his dissatisfaction to defendant's predecessors, County Judges Norton, Redell and Smith; and that he had also advised the defendant of his personal dissatisfaction. Mr. Kennedy stated that plaintiff possessed a flippant attitude towards her job assignments; that she had a problem in dealing with administrative matters and budgeting; that her files were never updated and she misplaced or threw away vital and essential files of the project. He further testified that he had recommended that plaintiff's duties be combined with the duties of the Program's Nutritionist, Mrs. Braswell. Mr. Kennedy stated that while the Director of the Economic Development District can presently hire and fire the county directors in the district, that during plaintiff's employment as Director, the responsibility of supervising the Newton County Program was the direct responsibility of the County Judge which included the right to hire and fire the personnel of the program.

Mr. Kennedy stated that the plaintiff was not afforded any tenure rights during her employment with the Newton County Project; and that the relationship was one "at will." Moreover, Mr. Kennedy emphasized that plaintiff was hired on a year to year basis, with the term commencing January 1st of each year and terminating on December 31st of each year; that grants were received on a year to year basis, and,

2. Plaintiff was a non-civil-service employee and, consequently, was not covered by any regulation protecting her against arbitrary discharge.

While plaintiff testified that she requested the defendant, by letter, to advise her of the reasons for her dismissal, plaintiff did not request a hearing before the county judge to consider any grievances she had with the judge's action.

at times, on a six month's basis; and that all employees, including the plaintiff, were hired for not more than a year because of the irregular and indefinite manner of the funding of the project; and that no written contract ever existed between his office or the Newton County Program and the plaintiff involving plaintiff's employment.

■ It is clear that if plaintiff were tenured or possessed a formal contract which afforded her security in continued employment, she would have been entitled to procedural due process before she could be terminated. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971). The Court is persuaded that plaintiff was not tenured and did not possess a formal contract. Plaintiff's status was simply an employee "at will." Plaintiff has not demonstrated, in any way, that the nonrenewal of her employment has deprived her of an interest in "liberty" or that she had a "property" interest in continued employment, despite the lack of tenure or a formal contract. *See: Perry v. Silverman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1971). While the defendant testified that he had received numerous complaints from citizens regarding plaintiff's incompetency as director, defendant "did not base the nonrenewal of [her employment] on a charge ... that [she] had been guilty of dishonesty, or immorality ... For [w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Nor is there a claim that defendant, in refusing to re-hire plaintiff, imposed on her a stigma or some other form of disability which hampers her freedom to take advantage of other employment opportunities. *See: Board of Regents v. Roth,* supra.

■ While it is plain that even an employee "at will" or nontenured may not be discharged because of his or her exercise of First Amendment Rights, the plaintiff has not demonstrated, and the Court so finds, that defendant's decision not to re-employ her was because of her exercise of First Amendment Rights.

The evidence reflects that defendant terminated both Democrats and Republicans alike and that he now employs both Democrats and Republicans in the Aging Project as well as in other areas of endeavor sponsored by Newton County. It must be remembered that Lloyd Kennedy, the individual who recommended plaintiff for the position, testified emphatically that he had become dissatisfied with plaintiff's performance and suggested to defendant and defendant's predecessors that she be terminated.

In conclusion, the Court holds that procedural due process did not mandate a prior hearing before plaintiff's dismissal since plaintiff has failed to demonstrate that requirements of procedural due process are applicable here. Moreover, plaintiff has not shown that defendant has terminated any protective interests vested in plaintiff which would require notice and an opportunity to contest the grounds relied upon before her termination could become effective. Accordingly, plaintiff's complaint is dismissed.